IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WILLIAM F. YOUNG, JR.                                          PETITIONER
ADC #650486

V.                              NO. 5:10-cv-00200 SWW-JWC

RAY HOBBS, Director,                                          RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days after being served with the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the District Judge was not offered at a hearing before the Magistrate Judge.

3.     An offer of proof stating the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

William F. Young, Jr., an Arkansas Department of Correction inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (doc. 2), along with a supporting brief (doc. 3).  Respondent concedes (doc. 7) that Petitioner has exhausted his state court remedies, *id.* § 2254(b), but asserts that the petition should be denied for other reasons.  Petitioner replied to the arguments for dismissal (doc. 11).  For the reasons that follow, the petition should be **denied**.

I.
Background

Following a jury trial in January 2007 in the Circuit Court of Sharp County, Arkansas, Petitioner was convicted of capital murder, aggravated robbery, residential burglary and theft of property.  He was sentenced to life imprisonment without parole for the capital murder conviction, life imprisonment for the aggravated robbery, and a total of fifty years

and $40,000 in fines for the burglary and theft of property, all to be served consecutively. (Resp't Ex. A, at 96-99.)[1]

According to the trial testimony,[2] on January 1, 2006, Petitioner and his wife, Leslie Young, accompanied Steve Furr to his home. Leslie testified that, while there, Furr made sexual advances to her, which led to an altercation between the two men. She saw Petitioner stab Furr twice, then she went outside. About ten to fifteen minutes later, Petitioner came out alone with an unidentified item, placed it in Furr's truck, and he and Leslie drove away in the truck. Later on January 2, Furr was found dead in his recliner, covered in blood. A medical examiner testified that the victim incurred twelve stab wounds and approximately twenty-two smaller abrasions, consistent with the use of a butcher knife and a screwdriver recovered from the recliner. One wound to the victim's chin appeared to have been caused by a third weapon, a heavy blunt-ended object. Petitioner had been observed with a knife fashioned out of a railroad spike. Petitioner admitted at trial to taking Furr's television and computer with him when he left, purportedly because he knew his fingerprints would be found on both items. He also admitted to taking Furr's truck, claiming it was the only form of transportation for him and his wife. Petitioner later pawned several tools identified as belonging to Furr, and the truck was found abandoned.

Following his convictions, Petitioner took a direct appeal, arguing that the trial court erred in failing to grant his motion for directed verdict. (Resp't Ex. B.) Finding no error, the

---

[1] Respondent's exhibits were submitted as paper copies with doc. 8.

[2] This summary of the testimony is drawn from the Arkansas Supreme Court's opinion in Petitioner's direct appeal.

Arkansas Supreme Court affirmed on November 1, 2007.  *Young v. State*, 266 S.W.3d 744 (Ark. 2007) (Resp't Ex. B3, B4) (*Young I*).

On January 11, 2008, Petitioner filed in the state circuit court a timely petition for post-conviction relief pursuant to Ark. R. Crim. P. 37.  He alleged that his trial counsel was ineffective for failing to communicate, failing to move for a change of venue, failing to obtain a psychological evaluation and forensic experts, failing to explain a plea offer, failing to object to evidence of his coerced confession, and creating bias against him in front of the jury.  He also alleged that his confession was coerced and that he was denied a fair and impartial trial because the prosecution and police used the media to bias the jury pool against him.  (Resp't Ex. C.)  An evidentiary hearing was held, at which Petitioner and his trial counsel testified.  After the hearing, Petitioner filed an amendment to his Rule 37 petition.  (Resp't Ex. D.)  On January 5, 2009, the state circuit court denied his petition as without merit.  *State v. Young*, No. CR-2006-05 (Sharp Co. Cir. Ct. Jan. 5, 2009) (Resp't Ex. E) (*Young II*).

On January 26, 2009, Petitioner filed a notice of appeal of the Rule 37 denial.  (Resp't Ex. F.)  Under Arkansas law, the lower court record must be docketed with the appellate court clerk within ninety days of the notice of appeal, unless the time is extended.  *See* Ark. R. App. P. -Crim. 4(a); Ark. R. App. P.-Civ. 5(a).  Petitioner did not lodge the record within the ninety-day period or obtain additional time to do so, thus failing to perfect his Rule 37 appeal in accordance with the applicable procedural requirements.  On September 11, 2009, he filed with the Arkansas Supreme Court a motion asking that his Rule 37 appeal be accepted without a certified record of the lower court proceedings,

arguing that it was the circuit clerk's fault that the certified record had not been tendered.

(Resp't Ex. J1.)  The supreme court denied the motion on December 3, 2009, stating:

> It is well settled that all litigants, including those who proceed pro se, must bear the responsibility of conforming to the rules of procedure. When proceeding pro se, it is not the responsibility of the circuit clerk, circuit court, or anyone else other than the petitioner to perfect an appeal.
>
> This court cannot assume jurisdiction of a matter without an adequate record.  Without a certified record, we are left to rely on petitioner's statements and copies of documents that may or may not be true and accurate copies of the material filed in the circuit court as a foundation for assuming jurisdiction.  This court does not proceed without a certified record where one is clearly required, and petitioner has not demonstrated that there is any good cause to make an exception in his case.

*Young v. State*, 2009 Ark. 608 (citations omitted) (Resp't Ex. J3, J4) (*Young III*).

Petitioner now brings this federal habeas petition, advancing the following claims:

1.    The trial court erred in denying his motion for directed verdict;

2.    His pretrial confession was coerced;

3.    He was denied a fair and impartial trial due to extensive pretrial publicity which biased the jury pool, and he should have been afforded a change of venue;

4.    He was denied the effective assistance of counsel in that his counsel failed to communicate with him before trial, failed to discuss trial strategy, failed to request an independent mental evaluation or consult with a psychiatrist in preparation for trial, and failed to convey and fully explain plea offers; and

5.    He was denied access to the Arkansas Supreme Court to appeal the denial of his Rule 37 post-conviction petition because the circuit court refused to provide a certified copy of the record.

## II.
## Statute of Limitations

Respondent first contends that the petition is time-barred under 28 U.S.C. § 2244(d), which generally requires that a federal habeas petition be filed within one year of the date upon which a state conviction becomes final. *See Jimenez v. Quarterman*, 129 S. Ct. 681, 685-86 (2009) (state conviction becomes final upon conclusion of direct appeals in the state court, followed by expiration of the ninety-day period for filing a petition for writ of certiorari with the United States Supreme Court); *Nelson v. Norris*, 618 F.3d 886, 891-92 (8th Cir. 2010). Petitioner's convictions became final in early 2008, and he filed this petition more than two years later, in July 2010.

Petitioner asserts (doc. 11, at 2-6) that his petition should not be dismissed as untimely because, during the period since the Arkansas Supreme Court affirmed his convictions, he has been pursuing state post-conviction relief diligently, including filing a timely Rule 37 post-conviction petition, then attempting to file and perfect an appeal of the Rule 37 denial. According to Petitioner, his efforts have included a motion to proceed with a belated appeal, two motions for rule on the clerk, a petition for writ of mandamus, a "motion to compel," and other correspondence to the Sharp County Circuit Court and the Arkansas Supreme Court. Some of these efforts are documented in the record; some are not. (*See* Resp't Ex. G, H, I, J1, J2, J3, J4.) Petitioner asserts that the federal limitations period should be equitably tolled due to his diligence and to state interference with his right to access to the courts, primarily the circuit clerk's refusal to prepare and transmit the record to the Arkansas Supreme Court. *See* 28 U.S.C. § 2244(d)(2) (time consumed by properly filed post-conviction proceedings in state court does not count against limitations period); *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (habeas petitioner entitled to

equitable tolling if he shows that he has been "pursuing his rights diligently" but "some extraordinary circumstance stood in his way and prevented timely filing").

The statute of limitations defense is not jurisdictional; therefore, the Court will proceed to Respondent's alternative arguments in the interest of judicial economy. *See Day v. McDonough*, 547 U.S. 198, 205 (2006); *Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir.) (proceeding to merits rather than remanding for development of equitable tolling issue), *cert. denied*, 130 S. Ct. 739 (2009).


III.
Analysis

Respondent asserts that: (1) Ground 1 fails to identify facts to support any insufficient-evidence claims or, alternatively, does not warrant federal habeas relief because this Court must defer to the Arkansas Supreme Court's decision on the issue; (2) Grounds 2 and 3 are procedurally defaulted because Petitioner failed to properly present them to the state courts, *see Coleman v. Thompson*, 501 U.S. 722 (1991); (3) Ground 4 is procedurally defaulted or, alternatively, does not warrant relief because this Court is bound by the findings of the state post-conviction court; and (4) Ground 5 is meritless.

A.      28 U.S.C. § 2254(d) Deference.

Where a  state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: where the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, *id.*; **or** (3) "was

7

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

A state court decision is "contrary to" federal law under § 2254(d)(1) if it applies a rule that contradicts the controlling Supreme Court authority or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a Supreme Court case, but nonetheless reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court's decision involves an "unreasonable application" of federal law under § 2254(d)(1) if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

Section 2254(d) imposes a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  The habeas petitioner carries the burden of proof.  *Id.*  This deferential review applies to adjudications of both appellate and trial-level state courts.  *See Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011) (post-conviction trial court's determination of ineffective-assistance claim "suffices as an adjudication on the merits" under § 2254(d)).

B.      Procedural Default.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court, thereby alerting those courts to the federal nature of his claims and giving them an opportunity to pass upon and correct any constitutional errors made there.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see* 28 U.S.C. § 2254(b) & (c) (requiring federal habeas petitioner to pursue all remedies available in the state courts).  When a habeas petitioner fails to raise his federal claims in the state courts in a timely and proper manner, he "deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights."  *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009).  Therefore, when a habeas petitioner defaults his federal claims by failing to raise them in state court in compliance with the relevant state procedural rules, federal habeas review is barred unless the petitioner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice.  *Id.*; *Coleman*, 501 U.S. at 750.

C.      Ground 1: Sufficiency of Evidence.

Petitioner first claims, without elaboration, that the trial court erred in denying his motion for directed verdict (doc. 2, at 3), an issue which was addressed by the Arkansas Supreme Court in his direct appeal.  *See Young I*, 266 S.W.3d at 748-51.  Thus, the question here is whether this decision was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts.

As interpreted by the United States Supreme Court, the Due Process Clause of the Fourteenth Amendment guarantees that "no person shall be made to suffer the onus of a

criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The evidence presented at a trial is constitutionally insufficient to convict only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. In making this determination, all of the trial evidence is to be viewed in the light most favorable to the state. *Id.* at 319. A reviewing court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and must defer to that resolution. *Id.* at 326.

In addressing Petitioner's claim, the Arkansas Supreme Court stated the applicable law as follows:

> We have long held that a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Cluck v. State*, 226 S.W.3d 780 ([Ark.] 2006). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

> Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

*Young I*, 266 S.W.3d at 748 (parallel citations omitted).   Applying this test, the supreme court recited in detail the evidence presented at Petitioner's jury trial, *id.* at 746-47, and found it to be sufficient as to his convictions[3] as follows:

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person.  Ark. Code Ann. § 5-12-102 (Repl. 2006 & Supp. 2007).  A robbery becomes aggravated if the person is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2006 & Supp. 2007).   In the instant case, the jury found that Bill [Petitioner] was armed with a deadly weapon.

We hold that substantial evidence supports the aggravated-robbery conviction.   First, it is undisputed that Bill employed physical force upon Steve [the victim].   He admitted to stabbing Steve; this admission was corroborated by the testimony of Leslie [Petitioner's wife], who witnessed the stabbing.   Second, the evidence indicates that Bill was armed with a deadly weapon.   He admitted to the use of the knife found at the crime scene, and the testimony of both Greg Girtman and Leslie Young established that Bill carried the knife fashioned from a railroad spike on the night of the homicide.
....

The fact that Bill pawned Steve's tools, tried to sell other stolen items, and abandoned the truck in the days following the homicide establishes a purpose to commit theft.  Theft requires only that a person knowingly take or exercise unauthorized control over, or make an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property.   Ark. Code Ann. § 5-36-103 (Repl. 2006 & Supp. 2007).   As this court has long held, a criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime.  *Watson v. State*, 188 S.W.3d 921 ([Ark.] 2004).  Moreover, because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his actions.  *Id.*  In the instant case, it is clear from the evidence set forth above that Bill intended to

---

[3]The supreme court found that the sufficiency-of-the-evidence challenge was preserved only as to the convictions for aggravated robbery, residential burglary, and capital murder.  *Id.* at 747-48.

deprive Steve of the property, and thus had a purpose of committing theft, when he used force against Steve.

Our court has upheld aggravated-robbery convictions in situations similar to the one at bar, where the purpose to commit theft was not apparent until after the force was employed. *See Grillot v. State*, 107 S.W.3d 136 ([Ark.] 2003). In the *Grillot* case, the evidence suggested that the homicide was the result of a murder-for-hire contract. *Id.* After the shooting, perpetrated by a co-defendant, Grillot took the victim's wallet and vehicle. *Id.* He later abandoned the vehicle and threw the keys and wallet into a canal. *Id.* We stated, "[a]ll these acts stemmed from an event where a deadly weapon was used. From these facts, a jury could reasonably infer that neither the truck nor the wallet were likely to be restored to Jackson, or his estate." *Id.* at 144. Because deprivation of property requires only disposal "under circumstances that make its restoration unlikely," Ark. Code Ann. § 5-36-101(4)(C) (Repl. 2006 & Supp. 2007), we held that force was used with the purpose to commit theft. *Id.* Similarly, in the instant case, though Steve was killed or at least injured before the purpose to commit theft was apparent, Bill's actions following the homicide clearly show a purpose to commit theft. Accordingly, we conclude there was sufficient evidence to support the aggravated-robbery conviction.

....

A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2006 & Supp. 2007). To "enter or remain unlawfully" means to enter or remain in or upon premises when not licensed or privileged to enter or remain in or upon the premises. Ark. Code Ann. § 5-39-101(2)(A) (Repl. 2006).

....

...In the instant case, the testimony indicated that Bill carried the knife made from a railroad spike with him on the night of the homicide. The jury could have inferred from this evidence the intent to commit a felony at the time of entrance. Furthermore, the residential-burglary statute clearly contemplates situations where the defendant enters lawfully but remains unlawfully. *See* Ark. Code Ann. § 5-39-201(a)(1). As the circuit court indicated, although Bill may have been licensed or privileged to enter the trailer, he was certainly not licensed or privileged to remain there after he began stabbing the owner and removing his property. For these reasons, we conclude that substantial evidence supports the residential-burglary conviction.

....

A person commits capital murder if, acting alone or with one or more other persons, he commits or attempts to commit an enumerated felony, and,

in the course of and in furtherance of the felony or in immediate flight from the felony, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(1) (Repl. 2006 & Supp. 2007).  Aggravated robbery is included in the list of enumerated felonies.  Ark. Code Ann. § 5-10-101(a)(1)(vi) (Supp. 2007).  The prosecution in the instant case proceeded against Bill Young on a felony-murder theory, with aggravated robbery as the underlying felony.

A forensic DNA examiner from the Arkansas State Crime Laboratory testified that samples from the blue jeans of both Bill and Leslie Young contained Steve's DNA.  In addition, an empty box of Maxum brand pepper spray was recovered from the crime scene.  A canister of the same brand of pepper spray was found on Leslie's person at the time of her arrest.  Finally, Anita Miller later discovered Steve's wallet, containing his driver's license, in her car under the seat where Leslie had been sitting prior to the arrest.  This evidence, combined with that evidence reviewed earlier, establishes that the capital-murder conviction is supported by substantial evidence.

A conviction of capital murder under the felony-murder rule requires proof that Bill caused Steve's death in the course of and in furtherance of the aggravated robbery and under circumstances manifesting extreme indifference to the value of human life.  *See* Ark. Code Ann. § 5-10-101(a)(1). Bill's own testimony indicated that he stabbed Steve and took the property as part of the same incident.  The jury was free to disbelieve his testimony regarding the defense of his wife and to conclude that he killed Steve in order to rob him.  The number of wounds, coupled with the testimony that there were some defensive and post-mortem wounds, is sufficient to show circumstances manifesting extreme indifference to the value of human life.  Thus, it cannot be said that the jury's verdict rested on speculation and conjecture.  The evidence supports the capital-murder conviction.

*Young I*, 266 S.W.3d at 748-51 (parallel citations omitted).

In evaluating a state court decision under § 2254(d), a federal habeas court must presume any factual findings made by the state court to be correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  After reviewing the transcript of Petitioner's state court trial and all of the parties' filings here, the Court has determined that the Arkansas Supreme Court's factual summary of the trial evidence is reasonable in light of the state court record and has not been rebutted by clear and convincing evidence.

Therefore, the supreme court's factual findings are presumed correct under § 2254(e)(1), and its decision was not based on an unreasonable determination of the facts under § 2254(d)(2).

The legal standard recited and applied by the Arkansas Supreme Court, while resting on state law, is consistent with *Jackson* and, therefore, was not "contrary to" the applicable United States Supreme Court law under § 2254(d)(1).  *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (it is not necessary for the state court to cite, or even be aware of, applicable United States Supreme Court opinions, as long as "neither the reasoning nor the result of the state-court decision contradicts them"); *Sera v. Norris*, 400 F.3d 538, 543 n.1 (8th Cir. 2005) (legal standards applied by the Arkansas Supreme Court to assess sufficiency of the evidence are not contrary to United States Supreme Court precedent).

Furthermore, the decision was not an objectively unreasonable application of the principles enunciated in *Jackson*.  While there may have been inconsistencies in the evidence, it was the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *See Garrison v. Burt*, No. 10-1709, 2011 WL 781219, *5 (8th Cir. Mar. 8, 2011).  The trier of fact was entitled to consider all the evidence, both circumstantial and direct, and it was reasonable for the court to infer from the evidence presented that Petitioner committed the charged crimes.  *See id.* (circumstantial evidence is "just as probative as any other type of evidence").  On review, the state supreme court viewed the evidence in the light most favorable to the state, consistent with *Jackson*.  On habeas review, this Court must again view the trial evidence in the light most favorable to the state, must presume that all conflicting inferences were resolved in the state's favor, and must defer to that resolution.

14

Doing so, this Court is convinced that the evidence was constitutionally sufficient to support Petitioner's convictions and that the Arkansas Supreme Court's decision on the issue thus was reasonable.  *See id.* at *4-*5.

Ground 1 should be dismissed as without merit.

D.     Grounds 2 & 3: Coerced Confession; Denial of Fair Trial.

In Ground 2, Petitioner argues that he was coerced by police into giving a statement, that the transcript of the statement was inaccurate, and that a video recording of the police interrogation was incomplete (doc. 2, at 4; doc. 3, at 7).  Respondent asserts that this claim is procedurally defaulted because Petitioner did not raise any claims regarding a coerced statement before trial, during trial or in his direct appeal and, in his Rule 37 petition, argued only that counsel was ineffective for failing to challenge the statement.

In Ground 3, Petitioner asserts that he was denied a fair and impartial trial, in violation of the Fourteenth Amendment to the United States Constitution, because extensive pretrial publicity and the low population of Sharp County biased the jury pool and he should have been afforded a change of venue (doc. 2, at 4-5; doc. 3, at 7-8). Respondent asserts that the only related Rule 37 claim raised by Petitioner was that counsel was ineffective in refusing to move for a change of venue.

A review of Petitioner's Rule 37 petition and amendment shows that, apart from his ineffective-assistance claims, he did raise a separate claim that he was coerced by police into giving a statement and that the transcript "does not correspond to [his] statement," as well as a separate claim that he was denied a fair and impartial trial because the "prosecution and police used the newspaper/press to bias the small existing jury pool." (Resp't Ex. C, at 4; Resp't Ex. D, at 2.)  The claims are, nevertheless, defaulted.

Failure to appeal the denial of a post-conviction claim to the highest state court constitutes a procedural default.  *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005). Petitioner did not obtain a ruling from the Rule 37 circuit court on the specific coerced-confession and denial-of-fair-trial claims, thus failing to preserve them for review by the Arkansas Supreme Court in a post-conviction appeal.  In fact, the Rule 37 circuit court did not specifically address his claims that counsel was ineffective for failing to challenge the confession or move for a change of venue.  (*See* Resp't Ex. E.)  It is well-established Arkansas law that it is the responsibility of a litigant to obtain a ruling on a claim from the lower court in order to preserve it for state appellate review.  *E.g.*, *Beshears v. State*, 8 S.W.3d 32, 34 (Ark. 2000) (petitioner failed to preserve ineffective-assistance claim for appellate review where lower court did not address that issue in its order denying post-conviction relief and petitioner did not request ruling on omitted issue); *see  Bell v. Norris*, 586 F.3d 624, 633 (8th Cir. 2009) (this is a "well-established and regularly applied rule" in the Arkansas state courts), *cert. denied*, 130 S. Ct. 1295 (2010).  Arkansas's procedural law provides an avenue for a Rule 37 petitioner to obtain a ruling from the lower court should the court fail to rule on an issue in its initial order.  *Beshears*, 8 S.W.3d at 34 (after circuit court enters its order, petitioner can ask court to modify its order to include a ruling on an omitted issue).  Petitioner asserts that the Rule 37 court was required by law to make written findings on each of his claims.  Regardless of this requirement, Petitioner had a means under Arkansas law – which he did not pursue – for compelling the Rule 37 court to comply with this duty.

Secondly, even if the claim had been preserved, Petitioner never perfected an appeal of the Rule 37 denial, depriving the Arkansas Supreme Court of the opportunity to

review *any* of the claims presented. Petitioner asserts (doc. 11, at 4-6) that he was prevented from perfecting his Rule 37 appeal due to the actions of the circuit clerk in failing to deliver a certified record to the Arkansas Supreme Court. He says that he exercised due diligence in attempting to perfect the appeal, "as well as can be done by an incarcerated indigent person in Arkansas."

As stated, under Arkansas law, the record must be tendered to the state appellate court within ninety days of the notice of appeal. Ark. R. App. P.-Crim. 4(a); Ark. R.App. P.-Civ. 5(a). Extensions may be requested from the lower court; however, the motion for extension must be filed before expiration of the ninety-day period, and the period for filing may not be extended more than seven months from entry of the order being appealed. Ark. R. App. P.-Civ. 5(b). An appellant is required to certify that he has ordered a transcript of the record from the court reporter and, if necessary, has made financial arrangements with the court reporter to pay for it. Ark. R. App. P. Crim. 2(c)(1). When a criminal defendant has failed to perfect an appeal of his criminal conviction or of the denial of post-conviction relief by lodging the record within the time allowed by the state procedural rules, he may file a motion for rule on the clerk pursuant to Ark. Sup.Ct. R. 2-2, attempting to demonstrate a "good reason" why the appeal was not timely perfected. *See McDonald v. State*, 146 S.W.3d 883, 887-89 (Ark. 2004).

The Arkansas appellate courts consistently require all litigants, including those who proceed pro se, to bear responsibility for taking the necessary steps for perfecting an appeal and conforming to the applicable procedural rules. *See, e.g., Brewer v. State*, 2010 Ark. 59, 2010 WL 295979, at *1 (unpublished); *Tarry v. State*, 57 S.W.3d 163, 164 (Ark. 2001); *Sullivan v. State*, 784 S.W.2d 155, 156 (Ark.1990) (responsibility to timely lodge

record belongs to appellant, even if pro se, indigent and incarcerated). Moreover, the Eighth Circuit Court of Appeals has found that the Arkansas procedural rules governing the filing of the appellate record are reasonable and adequate to bar federal habeas review and that their general application does not violate due process. *Lovell v. Norris*, 198 F.3d 674, 676-79 (8th Cir.1999).

While Petitioner made some efforts to compel the circuit court to forward parts of the record to the Arkansas Supreme Court, it is undisputed that the record was never lodged, that he never obtained an extension of time to do so, and that he never requested a transcript from the court reporter.  Some of his submissions were rejected as procedurally inadequate and were returned unfiled.   (*See* Resp't Ex. H & I.)  When he finally filed a motion for rule on the clerk to accept his appeal without a certified record – more than eight months after the Rule 37 denial –  he blamed the circuit clerk for his failure to tender the record.   The supreme court reiterated its well-established rule that "it is not the responsibility of the circuit clerk, circuit court, or anyone other than the petitioner to perfect an appeal."  *Young III*, *supra* at *1.  The court further stated that it could "not proceed without a certified record where one is clearly required," and that Petitioner had not demonstrated "good cause" to make an exception in his case.  *Id.*

A federal habeas court "should not consider whether the state court *properly* applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules."  *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004).  When a state court has declined to address a prisoner's claim because he failed to meet state procedural requirements, the prisoner has forfeited his right to present the claim through a federal habeas petition, unless he can meet strict cause/prejudice

standards or demonstrate that failure to consider his claims will result in a "fundamental miscarriage of justice" due to actual innocence. *Id.*

Cause requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman*, 501 U.S. at 753. The law is clear that a petitioner's pro se status, limited education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently *external* to constitute cause overcoming a procedural default. *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir. 1991); *McKinnon v. Lockhart*, 921 F.2d 830, 832 n.5 (8th Cir. 1990); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988).

In addition, because there is no Sixth Amendment right to post-conviction counsel, the fact that Petitioner was proceeding without counsel during the period for seeking post-conviction relief cannot create cause to avoid a procedural bar. *Burns v. Gammon*, 173 F.3d 1089, 1093 (8th Cir. 1999). The state has no responsibility to ensure that a criminal defendant is represented by counsel in state post-conviction proceedings; therefore, it is the defendant who must bear the consequences of a failure follow state procedural rules for presenting post-conviction claims during that period. *Coleman*, 501 U.S. at 754; *accord Wooten v. Norris*, 578 F.3d 767, 778-81 (8th Cir. 2009).

While certainly frustrating, the difficulties Petitioner encountered in attempting to perfect his Rule 37 post-conviction appeal are not sufficient to excuse his failure to comply with Arkansas's firmly established procedural rules. He has not demonstrated adequate

cause for his procedural default;[4] therefore, federal habeas review of Grounds 2 and 3 is procedurally barred and those claims should be dismissed.

      E.     <u>Ground 4: Ineffective Assistance of Counsel.</u>

Petitioner asserts that he was denied the effective assistance of counsel in that his counsel failed to communicate with him before trial, failed to discuss trial strategy, failed to request an independent mental evaluation or consult with a psychiatrist in preparation for trial, and failed to convey and fully explain plea offers (doc. 2, at 5-6; doc. 3, at 8-9). With one exception, these claims were raised and addressed in his Rule 37 circuit court proceedings.

Respondent first asserts that the claims are procedurally defaulted because of his failure to perfect his Rule 37 appeal.  As explained above, the Court agrees that all of his Rule 37 claims are defaulted for this reason and that he has failed to demonstrate cause to overcome that default.  Additionally, a further default exists as to Petitioner's current claim that counsel was ineffective for failing to consult with a psychiatrist.  A review of Petitioner's Rule 37 petition and amendment (Resp't C & D) shows that he never raised that specific claim in his Rule 37 proceedings.  If a specific factual ground for an ineffective-assistance claim is raised in state court and a related, but different, factual ground is asserted in federal court, the latter is procedurally defaulted.  *Osborne*, 411 F.3d at 919 n.7.

---

[4]Because no cause has been shown, the prejudice element need not be addressed. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).  Petitioner does not allege actual innocence.

Regardless of his procedural default, Petitioner's remaining ineffective-assistance claims clearly were adjudicated on the merits by the Rule 37 circuit court, and the rulings were not contrary to or an unreasonable application of clearly established federal law.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court articulated the familiar two-part standard for analyzing claims that a criminal defendant's counsel was constitutionally ineffective: whether the attorney's conduct was professionally unreasonable under the circumstances, and whether this prejudiced the defendant's defense. *Id.* at 688. An attorney's performance is deficient when it falls below "an objective standard of reasonableness." *Id.* The defendant is prejudiced by the inferior performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In evaluating an ineffective-assistance claim, *Strickland* directs the reviewing court to presume that counsel's performance "falls within the wide range of reasonable professional assistance" and to further presume that the challenged action "might be considered sound trial strategy." *Id.* at 689.

Although not citing *Strickland*, the Rule 37 court cited and applied its standard: *i.e.*, whether "trial counsel's representation fell below an objective reasonable standard and [whether] there was a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Young II*, *supra* at 4. The court also stated, consistently with *Strickland*, that trial counsel is presumed competent, with the defendant bearing the burden of overcoming that presumption. *Id.* at 5. Its decision was, therefore, not contrary to the governing United States Supreme Court precedent.

Furthermore, the decision was not an unreasonable application of that precedent. As recently stated by the Supreme Court, "Surmounting *Strickland*'s high bar is never an easy task, ... [and e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable, but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Here, it was reasonable for the Rule 37 circuit court to conclude that counsel provided constitutionally adequate representation in the areas specified.

Regarding Petitioner's first two claims that counsel failed to communicate and failed to discuss trial strategy and defense, the circuit court made the following factual findings, based on the testimony and other evidence: that this was counsel's fifth murder case as sole counsel; that counsel visited Petitioner in jail at least twice and that his secretary visited on a monthly basis; that counsel and Petitioner discussed procedure and trial strategy during their conversations; that counsel watched all recorded interviews, and read all statements given by Petitioner; that counsel read all correspondence from Petitioner; that counsel obtained a transcript of the jury trial of Petitioner's wife, at which she received a life sentence; and that he reviewed with Petitioner the evidence presented in his wife's trial, which would be substantially the same as that to be presented at his trial.  The Rule 37 court further found that Petitioner wanted to "get his side of the story out to benefit his wife" and that he consistently maintained, in his conversations with counsel, that he killed

the victim in defense of his wife, and that counsel advised him of the ramifications of testifying. *Young II*, *supra* at 2-4. As Petitioner has not rebutted these factual findings by clear and convincing evidence, they are presumed correct under § 2254(e)(1). Based on the findings, the Rule 37 court reasonably found that, as to Petitioner's first two claims, he had not demonstrated objectively unreasonable representation or prejudice under *Strickland*.

The Rule 37 court also reasonably adjudicated Petitioner's claim that counsel was ineffective for failing to request an independent mental evaluation. The court found that counsel moved for a mental evaluation, which was performed, and that another was not requested by Petitioner. *Id.* at 3. Based on these presumptively correct factual findings, the state court reasonably applied *Strickland*'s principles.

Finally, the Rule 37 court reasonably adjudicated Petitioner's claim that counsel was ineffective for failing to convey and explain plea offers. The court noted: counsel's testimony that he conveyed all plea offers to Petitioner but that Petitioner refused them and wanted a trial; Petitioner's testimony that trial counsel discussed with him a thirty or forty year offer, which he would not take because his wife had already received a life sentence and he was the person who killed the victim; and evidence in the trial record where Petitioner rejected a plea offer after careful explanation by the trial judge and consultation with his attorney. *Young II*, *supra* at 3-4; *see* Resp't Ex. A, at 152-58. In light of these presumptively correct factual findings, the Rule 37 court reasonably concluded that Petitioner failed to demonstrate that counsel's performance regarding the communication of plea offers fell below an objective reasonable standard, or that there was a reasonable

probability the result of Petitioner's criminal proceeding would have been different but for counsel's conduct.

Petitioner's ineffective-assistance claims raised in Ground 4 should be dismissed as procedurally barred or, alternatively, as not warranting federal habeas relief under the deferential standard of § 2254(d).

F.      Ground 5: Denial of Access to Courts.

Petitioner's last claim for federal habeas relief is that he was denied access to the Arkansas Supreme Court in his Rule 37 post-conviction appeal due to the state circuit court's failure to provide a certified record (doc. 2, at 6-7; doc. 3, at 2-7).

Under 28 U.S.C. § 2254, a federal habeas petition can be granted if a prisoner is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Because the Constitution does not guarantee the existence of collateral, state post-conviction proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), infirmities in such proceedings do not raise constitutional issues cognizable in a federal habeas application. *Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007); *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir.1990). Federal courts may upset a state's post-conviction relief procedures "only if they are fundamentally inadequate to vindicate the substantive rights provided." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2320 (2009).

As stated, Arkansas's well-established procedural rules reasonably provided Petitioner the means to appeal the denial of his state post-conviction petition, and he failed to comply with those rules. *See Lovell*, 198 F.3d at 679. Any perceived deficiencies in

24

those proceedings are not constitutional errors that could justify granting an application for a writ of habeas corpus.

Ground 5 should be dismissed as without merit.

IV.
<u>Conclusion</u>

For the above-stated reasons, this 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 2) should be **dismissed in its entirety with prejudice**.   Furthermore, a certificate of appealability should be denied, as Petitioner has not made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(1)-(2); Rule 11, Rules Governing § 2254 Cases in United States District Courts.

DATED this 6th day of May, 2011.


_____
UNITED STATES MAGISTRATE JUDGE